IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

KAREN NAKAYAMA and ROBERT BRIDGES

        Plaintiffs,

*vs*.

JENNIFER L. and CODY K. SANDERS,

        Defendants.

## COMPLAINT

### I.    STATEMENT OF THE CASE

1. This is a civil action for declaratory and injunctive relief and the imposition of civil penalties under the Federal Clean Air Act ("the Act"), 42 U.S.C. § 7401, *et seq*. This action seeks an order enjoining defendants' chronic release of harmful air pollutants from a coal fired boiler owned and operated by them on their property, in La Plata County, Colorado, in violation of the Act, the Colorado Air Quality Control Act, C.R.S. § 25-7-101, *et seq*., the Southern Ute Indian Tribe/State of Colorado Environmental Commission, C.R.S. § 25-7-1301, *et seq*. and the respective federal and state implementing regulations, 40 C.F.R. Part 60 and 5 C.C.R. 1001-1 through 1001-18. This action also includes numerous wrongs namely nuisance, invasion of privacy by Intrusion, Intangible Trespass and Intentional Infliction of Emotional Distress committed by Defendants upon Plaintiffs in

retaliation of Plaintiffs' raising the air quality issues.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 42 U.S.C. § 7604(a) (citizen suit provision of Clean Air Act) and 28 U.S.C. § 1331. The relief requested is authorized pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 7604. Further, this Court has pendent jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1367.

3. In compliance with 42 U.S.C. § 7604(b)(l)(A), on August 4, 2016, Plaintiffs notified the Administrator of the Environmental Protection Agency ("EPA"), the Colorado Department of Public Health and Environment ("CDPHE"), the Southern Ute Indian Tribe ("SUIT"), the Colorado's Attorney General and the defendants of the alleged violations and plaintiffs intent to sue. *See* Notice dated August 4, 2016 attached as Exhibit 1.

4. More than sixty days have passed since notice was served. Defendants have violated, and remain in violation of the Act. Neither the EPA, the CDPHE or the SUIT have commenced and diligently prosecuted a court action to redress these violations.

5. The violations complained of have taken place in rural unincorporated La Plata County, Colorado and within the exterior boundaries of the Southern Ute Indian Reservation on fee, non-trust land. Therefore, venue in the District of Colorado is proper pursuant to 42 U.S.C. § 7604(c) and 28 U.S.C. § 1391(b) and (c).

## III. PARTIES

6. Plaintiffs Karen Nakayama and Robert Bridges are the owners of a tract of land located at 12187 County Road 120, in La Plata County, Colorado, consisting of 6.2-acres and have lived on and owned the property since December 17, 2001.

2

7. Defendants Jennifer L. and Cody K. Sanders are the owners of a tract of land located at 12191 County Road 120, in La Plata County, Colorado, consisting of approximately 40.15-acres and which property is adjacent to and east of Plaintiffs' property. Defendants obtained title to their property on or about March 20, 2012.

8. Defendants installed a coal-fired boiler on their property approximately three years ago and such emits coal combustion by-product into the air upon ignition, firing and continued burning.

### IV.  STATEMENT OF FACTS

9. Plaintiffs and Defendants met in April of 2012 shortly after Defendants took title to their property. The parties initially had an amiable relationship, however, once Defendants installed their coal-fired boiler and Plaintiffs' complained about the amount of smoke, odor and physical and medical impacts the coal-fired boiler was having on the Plaintiffs, such relationship deteriorated.

10. Plaintiffs have requested that Defendants' find an alternate source of fuel for their coal-fired boiler, however, Defendants have refused to make any accommodation to Plaintiffs' in an effort to reduce the intrusive and medically harmful affects of the coal emissions from Defendants' coal-fired boiler.

11. Beginning on or about October of 2014 after Defendants' installed their coal-fired boiler, through the present, Defendants have intentionally intruded, physically and emotionally upon the seclusion and solitude of Plaintiffs' by the burning of coal and the resultant emissions therefrom which directly impact Plaintiffs' property, residence and living space, as well as their lungs, eyes, nose and mouth.

12. As a result of Plaintiffs' complaints due to the excessive smoke and smell resulting from the coal-fired emissions, Plaintiffs' have been subjected to harassment and

3

intimidation by the Defendants whereby Defendants have exhibited a large flag on the shared property line depicting a fist with a raised middle finger, continued shining of bright lights directed into Plaintiffs' home throughout the night, Defendants' placement of a pig sty adjacent to Plaintiffs' home (15' feet from Plaintiffs' garage and 60' feet from Plaintiffs' kitchen), and the seepage of pig waste onto Plaintiffs' property with the accompanying odor.

13. The coal-fired boiler is a fossil fuel-fired heating facility installed and operated outside of Defendants' home. The coal-fired boiler:

- Is shop-built of sheet metal, approximately 6 feet high, 4 feet wide, and 7 to 8 feet long;

- Was constructed in Pennsylvania and obtained by the current owner/operator (Defendants) approximately three years ago;

- The exact age of the coal-fired boiler is unknown, however it is estimated to be between 10 to 20 years and this type of boiler is no longer legal to operate in the State of Pennsylvania due to environmental regulations;

- The Defendants' coal-fired boiler was originally installed with a shorter stack, however a taller stack was installed approximately two years ago;

- The coal-fired boiler firebox has a ceiling-mounted heat exchanger, a burning grate, and a removable ash drawer;

- The heat exchanger has connections and burner fueled by propane either for dual-fuel use or simply to raise the operating temperature;

- The heat exchanger provides heated water at 140 degrees Fahrenheit to an in-floor heating system in the Defendants' home (estimated size 6,000 SF). There is no secondary heat exchanger;

- The unit is normally fired for ½ to 1 hour in the morning near sunrise (in

October through May) and similar or longer times in the afternoon before sunset, with burning continuing after sunset;

• Approximately 200 to 300 pounds of coal is shoveled in a single time for each burn. Immediately after installation, Defendants burned wood, but Defendants switched the fuel source to coal approximately two years ago. Defendants told neighbors that the boiler was a duel-fuel unit. Coal comes from the nearby National King Coal Mine;

• Morning prevailing winds in winter are from the east and northeast, so the plume is often blown across the 12191 residence and towards the Plaintiffs' residence on County Road 120;

• Plaintiffs and their neighbors report that smoke during the burns typically lasts for one hour or more, and is consistent during that period;

• The smoke has a strong odor (associated with coal burning) and sometimes odors which may indicate Defendants are burning trash (associated with plastic, paper, and food). Smoke may vary in color from burn to burn and during burns.

14. Coal combustion by-products from the coal-fired boiler are emitted through a smoke stack.

15. On December 30, 2016 observations and recordation of the opacity of emissions from Defendants' coal-fired boiler in accordance with EPA Method 9 showing visible emissions from the smoke stack averaged 50% for a high six (6) minute period in a ten (10) minute formal observation and total of a 45-minute general observation. The minimum opacity reading was 35%. Regulatory opacity standards common for coal-fired industrial boilers generally may not exceed 20% opacity. Defendants' coal-fired boiler emissions significantly exceed opacity standards.

16. Elevated levels of fine particulates in the atmosphere, similar to the particulates emitted by the Defendants' coal-fired boiler, can be lodged deep in the lungs and have been linked with increased human mortality. Respirable particulates are also associated with morbidity, especially asthma, bronchitis, pneumonia, shortness of breath, colds, and other respiratory diseases. In fact, Plaintiffs suffer medically from the emissions and have been forced from their home on a number of occasions and sought medical attention.

17. Sulfur dioxide emissions have been linked to increased mortality. Sulfur dioxide also exacerbates bronchitis and increases the frequency and severity asthmatic distress. As a consequence of coal combustion, sulfur dioxide emissions can form sulfate particulates that are damaging to lungs, forests and property.

18. Elevated levels of nitrogen oxides can lead to pulmonary dysfunction, which may result in chronic pulmonary disease, such as emphysema or bronchitis, or exacerbate an already existing respiratory disease. Exposure to nitrogen oxides is also linked to acute respiratory infections and causes visual and olfactory disturbances. Laboratory animal studies demonstrate that chronic exposure to nitrogen oxides can lead to vascular congestion, edema, bronchitis, consolidation, exudative plugging of the bronchi, tissue destruction, abscess formation, and pneumonitis.

19. Sulfur dioxide and nitrogen oxides from the burning of coal encounter wind, light, and other natural and man-made chemicals upon entering the atmosphere. Through chemical reactions in the atmosphere, they form sulfates, nitrates, sulfuric acids, and nitric acids. These compounds can be carried long distances before being deposited, either dry or wet with rain or snow.

20. Carbon dioxide emitted to the atmosphere as a result of fossil fuel combustion

is suspected to cause changes in the Earth's climate.

<u>Federal, Colorado and Southern Ute Indian Tribe Clean Air Act Requirements</u>

21. The primary objective of the Colorado Air Pollution Prevention and Control Act, 25-7-101, C.R.S. *et seq.,* is to "foster the health, welfare, convenience, and comfort of the inhabitants of the state of Colorado and to facilitate the enjoyment and use of the scenic and natural resources of the state." C.R.S. § 25-7-102.

22. Similarly, the objective of the federal Clean Air Act is "to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population." Section 101(b), 42 U.S.C. § 7401(b).

23. In 1970, Congress amended the federal Clean Air Act to require all states to submit state implementation plans ("SIP") to the U.S. EPA for its approval that demonstrated how they would achieve national ambient air quality standards sufficient to protect the public health and welfare. 42 U.S.C. § 7410.

24. If EPA determined all or any part of a state SIP did not assure sufficient compliance with the provisions of the federal Clean Air Act, EPA was required to promulgate and enforce an implementation plan for the state. 42 U.S.C. § 7410(c).

25. Pursuant to Section 116 of the Clean Air Act, 42 U.S.C. § 7416, no state may adopt or enforce an emission standard or limitation, which is less stringent than the corresponding federal standard. The Clean Air Act does, not prevent states from enforcing emission limitations for stationary air pollution sources that are more stringent than federal standards.

26. "If an Indian tribe submits an implementation plan to the Administration, … the plan shall be reviewed in accordance with the provisions for review set forth in this section for state plans … [T]he plan shall become applicable to all areas (except as

expressly provided otherwise in the plan) located within the exterior boundaries of the reservation, notwithstanding the issuance of any patent and including rights-of-way running through the reservation." 42 U.S.C. § 7410(o).  On June 30, 2016, a long-term plan for the Reservation Air Program was prepared in accordance with the Intergovernmental Agreement Between The Southern Ute Indian Tribe and the State of Colorado Concerning Air Quality Control on the Southern Ute Indian Reservation dated December 13, 1999 ("IGA") and as set forth in C.R.S. § 24-62-101 and as recognized in federal law (Act of October 18, 2004, Pub.L. No. 108-336, 118 Stat. 1354).

27. Emission Control Regulation No. 1, promulgated by the Colorado Air Quality Control Commission at 5 C.C.R. 1001-3, Section 11.A.1., makes it unlawful for any owner or operator of a stationary source to allow or cause the emission into the atmosphere of any air pollutant which is in excess of 20% opacity.

28. In the air pollution context, percentage opacity is the degree to which the transmittance of light is reduced by air pollutants.

Excess Opacity Emissions at the Defendants' Property

29. Exhibit 2 to this complaint summarizes in tabular form the December 30, 2016 emissions from Defendants' coal-fired boiler that significantly exceeded 20% opacity.

30. Defendants regularly ignite, fire and burn from their coal-fired boiler, especially in the fall, winter and spring (October through May) sending plumes and emissions consistent with the EPA Method 9 observation made on December 30, 2016.

31. Neither the EPA, the CDPHE nor the Southern Ute Indian Tribe have issued any order or assessed any penalties regarding the opacity exceedences referred to herein.

32. The excessive emissions from the Defendants' coal-fired boiler over the last

three years have degraded the air quality in and around Plaintiffs' property.

<u>Failure Properly to Document Upset Conditions</u>

33. Defendants have not explained fully in writing the cause of their excess emissions.

34. Defendants have not explained fully in writing what action has been or is being taken to correct the conditions causing their excess emissions.

35. Defendants have not explained fully in writing what action has been or is being taken to prevent their excess emissions in the future.

## V. <u>CAUSES OF ACTION</u>

### FIRST CAUSE OF ACTION
**(Emissions In Violation Of Colorado Air Pollution Regulations)**

36. Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 35 for all causes of action stated below.

37. Colorado Air Quality Control Commission ("AQCC") regulations at 5 C.C.R. 1001-3, II A. 1., and by the IGA, the Southern Ute Indian Tribe, prohibit the emission of air pollutants by any owner or operator of any stationary source into the atmosphere in excess of 20% opacity.

38. Colorado AQCC Common Provisions Regulations at I.A., 5 C.C.R. 1001-2, I.A., define "owner or operator" as any "person who owns, operates, leases, controls, or supervises an air pollution source."

39. Colorado AQCC Common Provisions Regulations at I.A., 5 C.C.R. 1001-2, I.A., define "stationary source" as any facility that emits any pollutant regulated by the federal Clean Air Act that is located on the same or contiguous property and that is owned or operated by the same person or by persons under common control.

9

40. Defendants are "owner[s] or operator[s]" within the meaning of Common Provisions Regulations I.A., 5 C.C.R 1001-2, I.A.

41. The coal-fired boiler is a "stationary source" within the meaning of Common Provisions Regulations I.A., 5 C.C.R 1001-2, I.A.

42. Defendants have violated and continue to violate Colorado AQCC regulations, the IGA and the Clean Air Act by emitting air pollutants from their coal-fired boiler in excess of 20% opacity.

## SECOND CAUSE OF ACTION
### (Nuisance)

43. Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 42 for all causes of action stated below.

44. Plaintiffs are the owners of a parcel of property as set forth herein.

45. Defendants own the adjacent parcel as above-described and have unreasonably interfered with Plaintiffs' use and enjoyment of their real property, particularly by emitting particulates from their coal-fired boiler that significantly degrades the air for breathing and view.

46. Additionally, Defendants' continued emission from the ignition firing and continued burning from Defendants' coal-fired boiler has unreasonably interfered with Plaintiffs' use and enjoyment of their real property, particularly causing significant health problems and forcing Plaintiffs to leave their property during times of use and especially when prevailing winds cause the emissions to flow directly on Plaintiffs' property.

47. Defendants' use and emission of their coal-fired boiler constitutes and creates a private nuisance.

48. Defendants' use and emissions from their coal-fired boiler has caused actual damages to Plaintiffs in an amount to be proven at trial.

49. Defendants' use and emissions from their coal-fired boiler is a continuing nuisance and is therefore subject to injunctive relief regarding its abatement.

### THIRD CAUSE OF ACTION
### (Invasion Of Privacy By Intrusion)

50. Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 49 for all causes of action stated below.

51. Defendants intentionally invaded Plaintiffs' privacy by burning their coal-fired boiler resulting in coal emissions penetrating Plaintiffs' property, residence and well-being which conduct is oppressive and calculated to cause Plaintiffs extreme mental anguish, health concerns and extreme discomfort.

52. Defendants intentionally invaded Plaintiffs' privacy and quiet enjoyment of their residence by Defendants' placement of a pig sty on the parties' shared property line and immediately adjacent to Plaintiffs' home, despite Defendants' ownership of 40 plus acres, which conduct by Defendants is calculated to cause Plaintiffs' discomfort due to the odor, the blaring of lights from the pig sty pointed directly into Plaintiffs home, and the seepage of pig sty waste onto Plaintiffs' property.

53. Defendants intentionally invaded Plaintiffs privacy by flying an offensive flag of a raised middle finger such that the flag was clearly visible by Plaintiffs' from nearly every viewpoint of Plaintiffs' property.

54. These invasions of privacy would be very offensive to a reasonable person.

55. These invasions of privacy have caused and continue to cause Plaintiffs' damages in an amount to be proven at trial, together with exemplary damages, pre-judgment and post-judgment interest, and costs.

## FOURTH CAUSE OF ACTION
### (Intangible Trespass)

56. Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 55 for all causes of action stated below.

57. Plaintiffs are the owners of a parcel of property as set forth herein.

58. Defendants have intentionally installed a coal-fired boiler that significantly exceeds all emission standards set forth for all private coal-fired boilers, which emissions spread onto Plaintiffs' property especially during times when prevailing winds blow from Defendants' property toward Plaintiffs' parcel of land and dwelling.  At no time have Plaintiffs consented to the foregoing.

59. Defendants' actions constitute and have created a trespass upon Plaintiffs' property.

60. Defendants' trespass has caused actual damages to Plaintiffs in an amount to be proven at trial.

61. Defendants' trespass is a continuing trespass and is therefore subject to injunctive relief regarding its removal.

## FIFTH CAUSE OF ACTION
### (Intentional Infliction Of Emotional Distress – Robert Bridges)

62. Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 61 for all causes of action stated below.

63. Since approximately May 17, 2016, Defendants have exhibited a large flag depicting a fist with a raised middle finger placed on the parties' shared property line and directly next to Plaintiffs' home in addition to a pig sty with the requisite sounds and bright

lights shining into the home. Also, directly adjacent to the shared property line whereby the pig waste seeps onto Plaintiffs' property causing foul odor and polluting Plaintiffs' property despite the fact that Defendants own 40 plus acres of land and could have easily placed the sty elsewhere. Such conduct is atrocious and intolerable in a civilized community.

64. The conduct of Defendants was extreme and outrageous.

65. Defendants acted recklessly or with the intent of causing Plaintiffs' severe emotional distress.

66. Defendants' conduct did cause Plaintiffs' severe emotional distress and did cause Plaintiffs to suffer injuries and damages including, mental distress and emotional anxiety, which have impaired Plaintiffs in their ability to reside at their home peaceably, causing actual damages such as continued use of the home and damages for payment of an alternative residence not only for the emissions from the coal-fired boiler, but also from Defendants' harassment in retaliation for Plaintiffs' complaints.

## SIXTH CAUSE OF ACTION
**(Intentional Infliction Of Emotional Distress – Karen Nakayama)**

67. Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 66 for all causes of action stated below.

68. Since approximately May 17, 2016, Defendants have exhibited a large flag depicting a fist with a raised middle finger placed on the parties' shared property line and directly next to Plaintiffs' home in addition to a pig sty with the requisite sounds and bright lights shining into the home. Also, directly adjacent to the shared property line whereby the pig waste seeps onto Plaintiffs' property causing foul odor and polluting Plaintiffs' property despite the fact that Defendants own 40 plus acres of land and could have easily placed the

sty elsewhere. Such conduct is atrocious and intolerable in a civilized community.

69. The conduct of Defendants was extreme and outrageous.

70. Defendants acted recklessly or with the intent of causing Plaintiffs' severe emotional distress.

71. Defendants' conduct did cause Plaintiffs' sever emotional distress and did cause Plaintiffs to suffer injuries and damages including, mental distress and emotional anxiety, which have impaired Plaintiffs in their ability to reside at their home peaceably, causing actual damages such as continued use of the home and damages for payment of an alternative residence not only for the emissions from the coal-fired boiler, but also from Defendants' harassment in retaliation for Plaintiffs' complaints.

## IV.   RELIEF REQUESTED

**WHEREFORE**, plaintiffs respectfully request this court to grant the following relief to correct defendants' significant and ongoing violations of law:

A. **ENTER A PRELIMINARY INJUNCTION** enjoining Defendants to cease operation of their coal-fired boiler unless and until Defendants can show through consistent monitoring that they can:

1) Operate the coal-fired boiler in such a manner as not to cause the unlawful emission of pollutants in excess of 20% opacity as determined by the COMs;

2) Operate the coal-fired boiler in a manner consistent with good air pollution control practices; and

3) Provide to plaintiffs, on a quarterly basis, the results of all air pollution sampling performed by defendants.

B. **ISSUE A PERMANENT INJUNCTION** incorporating the requirements of

the preliminary injunction and further requiring defendant to:

    1)    Operate the coal-fired boiler in strict compliance with all applicable statutes and regulations;

    2)    Maintain a procedure sufficient to ensure compliance with the court's order;

C.    **DECLARE** that Defendants have violated 42 U.S.C. § 7604 and **ORDER** defendants to pay up to $100,000 per defendant for beneficial mitigation projects, as provided for by 42 U.S.C. § 7604(g)(2), consistent with the purposes of the Clean Air Act;

D.    **DECLARE** that Defendants have violated 42 U.S.C. § 7604 and **ORDER** defendants to pay plaintiffs their costs of litigation, including but not limited to reasonable attorney and expert witness fees, as authorized in Section 304 of the Act, 42 U.S.C. § 7604(d); and

E.    **FIND** in favor of Plaintiffs and against Defendants on each of the remainder Causes of Action two through six and **ORDER** Defendants to pay damages, interest, costs, fees for violations raised in Plaintiffs' Causes of Action.

F.    **GRANT** such other relief as the Court deems necessary and proper.

**RESPECTFULLY SUBMITTED**, this 30th day of January, 2017.

    **Goldman, Robbins, Nicholson & Mack, P.C.**

By:    */S/ Michael A. Goldman*
    Michael A. Goldman (Reg. #17443)
    679 E. 2nd Avenue, Suite C
    P.O. Box 2270
    Durango, CO  81302
    Telephone:  (970) 259-8747
    Fax:  (970) 259-8790
    Email:  goldman@grn-law.com
    Attorneys for Plaintiffs